# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| YLETHA HART, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  CIV-20-911-SLP |
| | ) |
| OKLAHOMA DEPARTMENT, | ) |
| OF TRANSPORTATION, | ) |
| | ) |
|    Defendant. | ) |

## COMPLAINT
### (JURY TRIAL DEMANDED)

Plaintiff, Yletha Hart (Ms. Hart), through her attorney of record, Melvin C. Hall of Riggs, Abney, Neal, Turpen, Orbison & Lewis herein files this Complaint against Defendant, the Oklahoma Department of Transportation (ODOT). In support of her Complaint, Ms. Hart states as follows:

### PRELIMINARY STATEMENT

1. This action arises under the provisions of the American with Disabilities Act, 42 U.S.C. §§ 12101 et seq. (ADA); for disability discrimination, failure to accommodate, and retaliation which is proscribed under ADA to address the deprivation of her rights from discriminatory employment practices by ODOT.

### JURISDICTION AND VENUE

2. The court has jurisdiction over this Complaint in that the matters in controversy arise under the laws of the United States, 28 U.S.C. § 1331 and 1343(a).

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391.

## PARTIES

4. Plaintiff, Yletha Hart is an American citizen of the United States, a resident of the City of Edmond, Oklahoma, and this judicial district. Ms. Hart had been employed with ODOT for 29 years, from June 1, 1990 until her termination on August 7, 2019.

5. Defendant, Oklahoma Department of Transportation is a state agency of the state of Oklahoma doing business in Oklahoma City, Oklahoma County, and this judicial district. Defendant is an employer under the Americans with Disabilities Act.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Ms. Hart's Charge of Discrimination was timely filed with the Equal Employment Opportunity Commission on September 18, 2019.

7. The EEOC assigned Ms. Hart's Charge of Discrimination with Charge Number 564-2019-02019.

8. On August 7, 2020, the EEOC issued a Notice of Right to Sue for this charge.

9. This lawsuit is filed within 90 days of receipt of Ms. Hart's Notice of Right to Sue.

10. Ms. Hart has exhausted all administrative remedies under federal law.

## INTRODUCTION

11. This action arises under the provisions of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.; for disability discrimination, failure to accommodate, and retaliation which is specifically prescribed under 42 U.S.C. § 12203. Ms. Hart is seeking declaratory relief, injunctive relief, and damages including actual damages and

compensatory damages to address the deprivation of her rights from discriminatory employment practices on the basis of her disability and protected activity by ODOT.

## STATEMENT OF THE CASE

12. Ms. Hart began her employment with ODOT on June 1, 1990, as a Transportation File Clerk.

13. In October 2013, Ms. Hart was promoted to the position of HR Talent Manager. As HR Talent Manager, Ms. Hart successfully performed her job duties and enjoyed an unblemished record of job performance.

14. On October 1, 2018, a large white male, later identified as Tim Harper, walked through the Human Resources door at ODOT with a camera, and began to video tape Ms. Hart and the surrounding area. Ms. Hart asked Harper if she could help him, and he replied "No." She asked him what company he was with and he said "News Now OK." When Ms. Hart asked for credentials, he said he didn't have any. Alarmed, Ms. Hart went to find security, who confronted Harper and asked him to leave the building. Harper, continuing to film the whole time, stated that he was doing a First Amendment Audit of ODOT and he had the right to be there. At that time, Ms. Hart noticed that the back of Harper's shirt had bullet holes and there was a target on the front of the shirt. The shirt also read "Do some good in the world double tap a terrorist." Ms. Hart called 911 and described Harper to the operator. She later saw pushing and shoving between Harper and the security guard. Capitol Patrol arrived and escorted Harper out of the building. Oklahoma City Police then

arrived and interviewed Harper outside of the building. Ms. Hart remained inside the building feeling threatened, harassed, and traumatized by what had just occurred.

15.  On October 2, 2018, while at work, Ms. Hart was told by ODOT Safety Manager, John Coleman, that she was famous and that she was on TV the night before. Coleman told Ms. Hart that Tim Harper had uploaded a video of himself claiming to have been assaulted at ODOT, and faulted security and the HR Lady (referring to Ms. Hart).

16.  Later that same day, Tim Harper and an even bigger white male returned to ODOT. Ms. Hart was forced to run to the nearest office to hide out until she saw them leave. Ms. Hart later found out that they came to ODOT to meet with some ODOT staff to view the actual video footage from the building. Director of HR, Brian Kirtley, later told Ms. Hart that she was going to jail for violating Harper's First Amendment rights, and that he (Kirtley) might attend the gun rally being held in Tulsa that Harper was going be a part of the next week. Ms. Hart felt like she had been punched in the gut. She felt humiliated, and felt that Kirtley was making a concerted effort to minimize the incident. That same day, Kevin Lowe, from the Office Services Division used the same verbiage about Ms. Hart violating Harper's First Amendment rights.

17.  On October 4, 2018, while at work, Ms. Hart received a phone call from Tim Harper. He wanted to lodge a complaint against an employee, and he needed someone in ODOT's Complaint Department. Apparently, Tim Harper did not know

4

that he was talking to the employee that he videotaped and harassed a few days earlier.

18. On October 9, 2018, when Ms. Hart arrived at work she was afraid, cautious, and hyper vigilant about her surroundings. She was later told that Tim Harper had uploaded a second video. The second video was the actual ODOT footage. Ms. Hart was shown a post from ODOT's Facebook page that had part of the ODOT video that showed Ms. Hart. Comments under the video stated that she (Ms. Hart) should go to jail for aiding a kidnapping and assault. Another person from the Office Services Division, Bart Vlegels, told Ms. Hart they were in the process of taking down several racist posts from Monday that were on ODOT's Facebook page.

19. Soon after, Ms. Hart got a phone call from someone who saw the most recent video post on October 8th, and he was angry. He was unaware that he was speaking to the employee on the video. He told Ms. Hart that the lady in the video wanted violence to occur, and he hoped her bosses saw the video. The caller said the guy (Harper) got roughed up and the woman (Ms. Hart) ran her mouth and disappeared, and thousands of other people are looking at this video. This call unnerved Ms. Hart, who immediately reported the call to Ken Philips and Rick Remkus in Facilities Management. They informed Ms. Hart of receiving numerous call from the public asking about her continued employment with ODOT. Later Ms. Hart checked her voice mail and found she had almost 50 messages. The messages included people threatening to come up to the building; saying "die"; expressing

5

anger; disapproving and threatening her job; calling her a discredit to her race (African American); and numerous other disparaging comments. These messages were all from people who had seen the videos. Ms. Hart's phone rang off the hook the entire day. She later found out that similar calls had gone throughout the central office of ODOT all day as well. Harassing calls regarding Ms. Hart were also made to ODOT's Director, Senior Staff, Civil Rights, Facilities Management, and HR to name a few.

20. Videos were sent throughout the building to Ms. Hart's coworkers' emails. Ms. Hart felt blindsided, overwhelmed, heartbroken, and concerned for her safety. Her name, office location, and office phone number were posted on the video, which had been loaded onto YouTube, and viewed thousands of times. To make things worse, Ms. Hart's management did not take the threats seriously. They even tried to minimize the situation. Ms. Hart felt unsafe, unprotected, unsupported, and alone to deal with this crisis that was not of her making.

21. On October 12, 2018, Ms. Hart went into work, but she could not stop crying. She was referred to talk to Nancy Graham with the Employee Assistance Program. She told Ms. Hart that she was experiencing trauma. Graham referred Ms. Hart to Ken Skidmore, who agreed to see her at 10:30 a.m. that day. Ms. Hart was later diagnosed with multiple mental disorders, including severe stress reactions to trauma, severe clinical depression, panic attacks, episodes of increased anxiety, and symptoms of agoraphobia.

22. On December 11, 2018, Ms. Hart's supervisor, Gary Sloup, submitted an FMLA form which stated that Ms. Hart's essential job functions were: Agency Talent Manager and Agency New Employee Orientation Manager, Attend career fairs, Conduct new employee training.

23. On May 22, 2019, Ms. Hart's supervisor, Gary Sloup, sent her a letter directing that she return to work with a full medical release by June 4, 2019.

24. On June 3, 2019, Ms. Hart sent Gary Sloup an email stating she was unable to return to work on June 4, 2019, and she attached two letters to the email: (1) May 20, 2019, letter from Dr. Dinah S. Cloud requesting reasonable accommodations for Ms. Hart and (2) May 30, 2019, letter from LPC, Katherine Anderson, which stated she supports Ms. Hart receiving the workplace accommodations listed in Dr. Cloud's letter.

25. On June 4, 2019, Gary Sloup responded to Ms. Hart's email stating "Thanks Yletha. Will do."

26. On June 5, 2019, Ms. Hart received a phone call from Gary Sloup, requesting that both he and Discipline Manager, Scott Lange, come to her house that day. Ms. Hart asked Gary Sloup, "for what reason?" And she was told they could not tell her the reason they wanted to visit her at home, so Ms. Hart declined the visit.

27. On June 10, 2019, instead of a response to the request for reasonable accommodations Ms. Hart sent to Gary Sloup on June 3, 2019, she received a

7

certified letter with a Proposed Disciplinary Action- Discharge, scheduling a Pre-disciplinary Hearing for June 14, 2019. Also in the certified letter was a Specifics of Cause and a Notice of Suspension with Pay.

28. On June 10, 2019, Ms. Hart sent an email to ODOT officials advising that scheduling her pre-termination hearing for Friday, June 14th violated ODOT policy B-312-1-(1), which requires 7 days advance notice. Ms. Hart's email also reminded ODOT that she had <u>not</u> received a response to her request for reasonable accommodations and that the receipt of the pre-termination notice indicates that ODOT did <u>not</u> consider her request for reasonable accommodation nor submitted it through proper channels, as required by ODOT policy B-306-8. As a result of Ms. Hart's email, the hearing was rescheduled to Wednesday, June 26, 2019 at 10:00 a.m.

29. On June 14, 2019, Ms. Hart received an email from Gary Sloup stating that they could handle changing her phone number and email, but her other requests for reasonable accommodations were deemed not reasonable or would place an undue hardship on others.

30. On June 17, 2019, Ms. Hart received a second certified letter with a Proposed Disciplinary Action- Discharge, re-scheduling her Pre-disciplinary Hearing for June 26, 2019. Also in the certified letter was a Specifics of Cause and a Disciplinary Certificate.

31. On June 20, 2019, Ms. Hart received an email rescheduling her pre-

8

termination hearing to July 2, 2019 at 10:30 a.m.

32. On June 25, 2019, Ms. Hart received a third certified letter with a Proposed Disciplinary Action- Discharge, re-scheduling her Pre-disciplinary Hearing for July 2, 2019. Also in the certified letter was a Specifics of Cause and a Notice of Suspension with Pay.

33. On July 2, 2019, the Pre-termination Hearing was held. The hearing was recorded. During the hearing Ms. Hart submitted a written response to the proposed discharge.

34. On July 2, 2019, Brian Kirtley, Director of Human Resources, sent an email responding to Ms. Hart's requests for reasonable accommodations. In said email Brian Kirtley essentially rejected <u>all</u> of Ms. Hart's requests for reasonable accommodations.

35. On July 2, 2019, Brian Kirtley sent Ms. Hart an email withdrawing the proposed termination to allow her to respond to his email regarding possible reasonable accommodations.

36. On July 9, 2019, Ms. Hart's attorney, Melvin C. Hall, submitted a response to Brian Kirtley's July 2, 2019, email regarding the reasonable accommodations that were proposed by Ms. Hart's doctors on May 20, 2019.

37. On July 10, 2019, Brian Kirtley sent Ms. Hart an email that essentially found that ODOT was unwilling to reasonably accommodate Ms. Hart's disability

38. On July 13, 2019, Ms. Hart emailed a letter to Brian Kirtley responding

9

to his rejection of her requests for reasonable accommodations.

39. On July 15, 2019, Brian Kirtley responded to Ms. Hart's email and letter stating "We've already considered and addressed your request to work from home."

40. On July 15, 2019, Ms. Hart received a certified letter with a Proposed Disciplinary Action- Discharge, scheduling her Pre-disciplinary Hearing for July 24, 2019. Also in the certified letter was a Specifics of Cause, a Disciplinary Certificate, and a Notice of Suspension with Pay.

41. On July 24, 2019, Ms. Hart's second Pre-termination Hearing was held. The hearing was recorded.

42. On August 9, 2019, via certified mail, Ms. Hart received her termination documents, which included Notice of Discharge- effective August 7, 2019, Specifics of Cause, and Disciplinary Certificate.

43. After August 7, 2019, after her termination, Ms. Hart received her personal belongings from ODOT. In one of the boxes was a shooting target which contains what appears to be five bullet holes.

## COUNT I
### Discrimination Based on Disability

44. Ms. Hart incorporates by reference all previous allegations.

45. ODOT engaged in intentional and unlawful employment practices in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12102 et seq. The

discriminatory practices include but are not limited to terminating Ms. Hart on August 7, 2019, due to her disability in violation of the ADA.

## COUNT II
## Failure to Accommodate

46. Ms. Hart incorporates by reference all previous allegations.

47. ODOT engaged in intentional and unlawful employment practices in violation the Americans with Disabilities Act, 42 U.S.C. §§ 12102 et seq. The discriminatory practices include, but are not limited to not making reasonable accommodations to the known mental limitations of Ms. Hart. ODOT cannot demonstrate that the accommodations requested by Ms. Hart would impose an undue hardship on its business operations.

## COUNT III
## Retaliation

48. Ms. Hart incorporates by reference all previous allegations.

49. ODOT engaged in intentional, unlawful, and retaliatory employment practices in violation of the ADA, specifically 42 U.S.C. § 12203. The retaliatory practices include, but are not limited to, terminating Ms. Hart on August 7, 2019, due to her protected opposition to the intentional and unlawful employment practices of ODOT.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Yletha Hart, seeks to recover against Defendant, the Oklahoma Department of Transportation:

1. Actual damages in the form of lost back pay and benefits.

2. Reinstatement, however, in lieu of reinstatement, Ms. Hart seeks front pay and all lost future earnings projected to her retirement.

4. Compensatory Damages for future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life.

5. Reasonable attorney fees and court costs, as well as other relief as the court deems appropriated

Respectfully submitted,

RIGGS, ABNEY, NEAL, TURPEN,
 ORBISON & LEWIS

s/ Melvin C. Hall
Melvin C. Hall, OBA No. 3728
528 NW 12th Street
Oklahoma City, OK 73103\
Telephone: (405) 843-9909
Facsimile: (405) 842-2913
Email: mhall@riggsabney.com

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**